UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DAVID MILES, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>STATE FARM FIRE AND )<br>CASUALTY COMPANY, )<br>)<br>Defendant. ) | Case No. 2:22-cv-00152-NAD |

**MEMORANDUM OPINION AND ORDER DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

For the reasons stated below and on the record in the August 9, 2023 motion hearing (*see* minute entry, entered: 08/09/2023), the court **DENIES IN PART** Defendant State Farm Fire and Casualty Company's motion for summary judgment (Doc. 25). *See* Doc. 46 (order granting in part summary judgment motion).

**I.     Background**

Plaintiffs David and Sherri Miles filed a complaint against Defendant State Farm, alleging two claims for relief: breach of contract (Count 1); and bad faith (Count 2). Doc. 1-1 at 4–5. The Plaintiff Mileses' allegations relate to an insurance claim that they filed with State Farm after a flooding event in their home (located in Homewood, Alabama), which began with a water leak in a second-floor bathroom. Doc. 1-1 at 4.

The court already has granted in part State Farm's summary judgment motion and dismissed with prejudice the Mileses' bad faith claim, and the following "part[s]" of the Mileses' breach of contract claim: any request for emotional distress damages; any amounts attributable to upgrades to their kitchen cabinets; and any amounts attributable to replacing the kitchen countertops. *See* Doc. 46 at 2; Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.").

As a result, the August 9, 2023 motion hearing addressed only the parts of the Mileses' breach of contract claim for (1) "all amounts spent on the cabinets—less the portions attributable to upgrades"—and (2) "damages to the home's HVAC ductwork," (3) "the home's electrical repairs," and (4) "the home's structural repairs." *See* Doc. 46 at 3; Doc. 41 at 2; Doc. 44 at 2. The motion hearing also addressed State Farm's argument for summary judgment based on the Mileses' alleged failure to comply with their post-loss duties. *See* Doc. 26 at 27–30; Doc. 41 at 18–23; Doc. 44 at 12–14.

## II. Discussion

Based on the record evidence and the controlling law, <u>and construing all evidence and reasonable inferences in the Mileses' favor</u>, there are genuine disputes of material fact for a jury on the remaining parts of the Mileses' breach of contract

2

claim.[1]

### A. The Mileses' breach of contract claim for amounts spent on the cabinets (less the portions attributable to upgrades), damage to the home's HVAC ductwork, the home's electrical repairs, and the home's structural repairs

There are genuine disputes of material fact for trial on the remaining parts of Mileses' breach of contract claim. Primarily, the parties dispute whether the leak/flood caused the alleged damages and necessitated the relevant repairs; in this case, that fact dispute will be for the jury. *See* Doc. 41 at 19–21; Doc. 44 at 3–12.

#### 1. Damage to the cabinets

The parties do not dispute that the relevant insurance policy covered at least some repairs to the cabinets, which the Mileses instead replaced completely. *See, e.g.*, Doc. 26 at 38–39; Doc. 41 at 1–2, 11, 21; Doc. 44 at 11–12. But the parties do dispute the extent of that insurance coverage (i.e., practically speaking, the appropriate remedy). While State Farm only covered limited repairs (*see, e.g.*, Doc. 31-1 at 159), Mr. Miles testified in his deposition that, based on a repair quote he

---

[1] *See, e.g.*, Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."); *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008) ("[The] district court must not resolve factual disputes by weighing conflicting evidence, since it is the province of the jury to assess the probative value of the evidence." (quoting *Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986)); *see also United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (even "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment").

had received, it was more cost effective to replace the cabinets than to repair them (Doc. 27-1 at 46–47).

In addition, William Burnham—the cabinetmaker who built the new cabinets for the Mileses—testified in his deposition that wood in cabinets that has absorbed water for some period of time is "never going to return back to like it was," and never would be as good as it was because of "swelling." Doc. 34-6 at 4. Thus, the Mileses have identified sufficient evidence to get to the jury on this part of their breach of contract claim.

### 2. Damage to the HVAC ductwork

As noted above, the parties dispute whether the leak/flood damaged the home's HVAC ductwork. *See* Doc. 26 at 37–38; Doc. 41 at 19–20; Doc. 44 at 2, 9–11. In this regard, the record shows that there were floor air vents in the bathroom where water from the leak could have entered into the ductwork. *See, e.g.*, Doc. 27-1 at 90; Doc. 28-2 at 29.

Mr. Miles testified in his deposition that, as a result of the leak, he saw water inside the ductwork and insulation inside of the ductwork was wet. Doc. 27-1 at 23, 89–90; *see* Doc. 41-1.

Records from J.G. Willens Building LLC—the contractor that assessed the house and then removed and replaced the ductwork, Doc. 27-1 at 58–59; Doc. 29-3 at 2—also stated that ductwork had to be removed on account of "filling with water

4

from plumbing leak located on second level." Doc. 29-3 at 1, 5. *But see* Doc. 32-1 at 38 (note in insurance case file that, during a call with a State Farm representative, J.G. Willens stated that the ductwork was "fine," but that Mr. Miles wanted the ductwork removed; Willens also stated that he felt that Mr. Miles "did him wrong"). In addition, the Mileses submitted a picture of the interior of the ductwork showing what they assert to be mold. Doc. 41-1. Accordingly, and notwithstanding State Farm's evidence that water from the flooding event did not enter the ductwork (Doc. 32-1 at 38; Doc. 27-1 at 30), the Mileses have identified sufficient evidence to get to the jury on this part of their breach of contract claim.

### 3. Electrical repairs

Again, the parties dispute whether the leak/flood caused damage that necessitated the electrical repairs that the Mileses have claimed on their insurance policy. *See* Doc. 26 at 36–37; Doc. 41 at 20; Doc. 44 at 7–9. Specifically, the Mileses hired Pick Electric to rewire the house to replace wall switches and electrical receptacles in the area affected by the flooding event; Pick Electric also removed and replaced an electrical panel in the laundry room—outside of the flooded/affected area—apparently to provide arc fault protection required for the new wiring. Doc. 27-1 at 36, 52; Doc. 30-4 at 12.

Mr. Miles testified in his deposition that, after the flooding event, an electrician for J.G. Willens told him that the house would have to be rewired, and

5

that Rick Addington—a building inspection officer with the City of Homewood, Doc. 35-1 at 3—told him that any wire, fixture, plug, or switch that got wet would need to be rewired. Doc. 27-1 at 40–42, 59; *see* Doc. 28-2 at 30.

The record also includes a letter from Addington to the Mileses, which stated that "[i]t is the city's policy to have wiring, fixtures, and devices replaced entirely in water damaged areas," and that Homewood requires "Arc Fault protections on circuits that are modified, replaced or extended." Doc. 30-1 at 1; *see* Doc. 35-1.

In addition, a State Farm representative had advised Mr. Miles that State Farm would consider covering "code upgrades" required by building or ordinance law. Doc. 32-1 at 53 ("[Insured] inquired about code upgrades. Advised if code upgrade[] is related to loss we would consider.").

While State Farm produced evidence showing that a complete rewiring of the flooded/affected area and a new electrical panel were not required (*see* Doc. 36-1 at 6–8), that factual dispute will be for the jury—i.e., the Mileses still have identified sufficient evidence to get to the jury on this part of their breach of contract claim.

### 4. Structural repairs

Likewise, the parties dispute whether the leak/flood caused damage that necessitated the structural/foundational repairs that the Mileses have claimed on their insurance policy. *See* Doc. 26 at 35–36; Doc. 41 at 20–21; Doc. 44 at 3–7. The records shows that several servicepersons had observed that water had entered

the crawlspace beneath the Mileses' house on account of the flooding event. *See* Doc. 32-6 at 12; Doc. 33-4 at 1; Doc. 32-1 at 54.

Mr. Miles testified in his deposition that before the flooding event he was able to open a closet door that was within the flooded/affected area, but that after the event the door would not open; Mr. Miles also noticed a "sag" in the floor near the door after the flooding event. Doc. 27-1 at 32, 54; Doc. 28-2 at 28–29. The Mileses hired BDry to work on structural repairs to the house after the flooding event; an owner of BDry also noted a "sag" in the floor—confirmed with a laser level—and testified in his deposition that water was the most common cause of foundational issues. Doc. 34-1 at 5–6.

On the other hand, State Farm produced evidence suggesting that any foundational issues were not caused by the flooding event. *See* Doc. 35-6 at 4–7. This factual dispute also will be for the jury. The Mileses again have identified sufficient evidence to get to the jury on this part of their breach of contract claim.

In this regard, State Farm also argues that the Mileses' claim for structural repairs fails because they do not have any expert testimony to support the allegation that the flooding event caused the structural damage to the house. Doc. 44 at 3–4 & n.2. State Farm is correct that a lay witness cannot offer expert testimony on the issue of causation. *See, e.g.*, *Ware v. Nationwide Ins. Co.*, No. 7:11-CV-4272-LSC, 2013 WL 1680514, at *4 (N.D. Ala. April 12, 2013); Fed. R. Evid 702. But proving

causation in an insurance case does not necessarily require expert testimony in all cases. *See, e.g.*, *Greater Hall Temple Church of God v. Southern Mut. Church Ins. Co.*, 820 F. App'x 915, 922–23 (11th Cir. 2020) (holding that the Eleventh Circuit's unpublished opinion in *Nix v. State Farm Fire & Casualty Co.*, 444 F. App'x 388 (11th Cir. 2011), should not be "read as requiring expert testimony to prove causation" where there is relevant, admissible lay testimony on the issue of causation). Indeed, *Nix* and other cases support the general rule of thumb that lay testimony can prove causation where a lay witness has sufficient personal knowledge of the relevant damage based on personal observation. *See, e.g.*, *id.*; *Nix*, 444 F. App'x at 390; *Southpoint Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 19-CV-61365, 2020 WL 3581611, at *4 (S.D. Fla. July 1, 2020); *Brown v. State Farm Fire & Cas. Co.*, 342 F. Supp. 3d 1234, 1246, 1249 (N.D. Ala. 2018).

In this case, expert testimony is not required. Mr. Miles observed water in the crawlspace on account of the flooding event, and stated in a letter that he observed a "sag" in the kitchen floor and an inability to open a closet door on account of the flooding event. Doc. 27-1 at 32, 54; Doc. 28-2 at 28–29. It will be for the jury to assess this lay evidence, based on Mr. Miles' personal observations from the time of the flooding event (*see* Fed. R. Evid. 701), assess State Farm's contrary expert evidence, and then determine the weight and credibility of the parties' conflicting evidence and testimony. *See, e.g.*, *Seamon v. Remington Arms Co.,*

*LLC*, 813 F.3d 983, 988–90 (11th Cir. 2016) ("The weight to be given to admissible expert testimony is a matter for the jury.").

### B.     The Mileses' alleged failure to comply with their post-loss duties

Nor is State Farm entitled to summary judgment based on the Mileses' alleged failure to comply with their post-loss duties.  The relevant insurance policy required that the Mileses had certain duties after loss, including to "cooperate with [State Farm] in the investigation of the claim," "protect the property from further damage or loss," "make reasonable and necessary temporary repairs required to protect the property," and "exhibit the damaged property" as "often as [State Farm] reasonably require[s]."  Doc. 27-3 at 29.

State Farm argues that Mr. Miles breached these post-loss duties by, among other things, selling cabinets he had replaced, moving countertops outside, removing ductwork without permission, hiring electricians to replace wiring and an electrical panel, and hiring a company to perform structural repairs on the foundation of the house.  Doc. 26 at 28–30; Doc. 44 at 2–3; *see supra* Part II.A.

However, Mr. Miles testified in his deposition that a State Farm agent told him to "do whatever it took to get [the] house dried out," and that he proceeded accordingly to avoid further damage.  Doc. 27-1 at 42; *see, e.g.*, Doc. 27-1 at 17, 39, 43.

State Farm again is correct that, in some cases, the court can grant summary

9

judgment based on an insured's breach of post-loss duties. *See, e.g.*, *Pittman v. State Farm Fire & Cas. Co.*, 868 F. Supp. 2d 1335, 1347–50 (M.D. Ala. 2012), *aff'd*, 519 F. App'x 656 (11th Cir. 2013). But those cases appear limited to situations where the undisputed record evidence shows such a breach of post-loss duties. *See, e.g.*, *Griffin v. State Farm Cas. Co.*, No. 5:22-CV-00332-MHH, 2023 WL 2533059, at *2 (N.D. Ala. March 15, 2023) ("The [plaintiffs] did not appear for the scheduled examinations under oath and did not produce the documents that State Farm requested," both of which were required by the post-loss duties in their insurance policy). Here, the facts are not so clear-cut. Whether Mr. Miles' conduct constituted a breach of—or compliance with—his post-loss duties is a question that will require factual determinations based on the weighing of the evidence, and that is a question for the jury.

### III. Conclusion

For the reasons stated above, Defendant State Farm's summary judgment motion (Doc. 25) is **DENIED IN PART**.

The court **SETS** this case for a telephone status conference on **Wednesday, September 20, 2023, at 1:00 PM**. Ahead of that status conference, counsel are **ORDERED** to meet and confer regarding potential case resolution and trial

scheduling.

    **DONE** and **ORDERED** this September 6, 2023.

                                              _____
                                              **NICHOLAS A. DANELLA**
                                              UNITED STATES MAGISTRATE JUDGE